UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAMUEL ALLEN, et al., | : | |
|     Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-09-cv-1112 (JCH) |
| | : | |
| CBS CORPORATION, | : | |
|     Defendant. | : | |
| | : | |
| | : | DECEMBER 1, 2008 |

**RULING RE: MOTION TO REMAND TO STATE COURT (Doc. No. 10)**

On June 25, 2009, Samuel Allen and eleven other plaintiffs filed a personal injury action in the Connecticut Superior Court, Judicial District of Fairfield at Bridgeport. On July 14, defendant CBS Corporation removed this case to federal court. See Not. of Removal (Doc. No. 1). The defendants removed pursuant to the federal officer statute, which permits removal of state actions brought against an officer or agency of the United States, or a person working under a federal officer. 28 U.S.C. § 1442(a)(1). Plaintiffs now move to remand to state court, arguing that this court does not have subject matter jurisdiction. See Mot. to Remand (Doc. No. 10). For the reasons stated below, the court denies plaintiffs' Motion for Remand.

**II.    FACTS**

Plaintiffs are twelve men[1] who were employed by General Dynamics Corporation, Electric Boat Division, in Groton, Connecticut for various periods between 1956 and the present. All worked in areas where they were exposed to asbestos and

---

[1] Samuel Allen, Robert Benjamin, Charles Spralling, Gary Chapman, Michael Gladue, Ralph Godfrey, William Holland, Kenneth Jones, Billings Miner, William Molonson, Alan Patridge, and Charles Sprague.

1

now suffer from asbestos-related diseases such as lung cancer, lung disease, asbestosis, and loss of lung function. See Pl.'s Mem. in Supp. of Mot. to Remand ("Pl.'s Mem.") at 1-4 (Doc. No. 11). Plaintiffs allege that their exposure to asbestos came at least in part from products the defendant manufactured for the Navy. See Compl., Ex. 1 to Not. of Removal.

CBS is the successor by merger to Westinghouse Electric Corporation ("Westinghouse").[2] See Not. of Removal at 1. Westinghouse designed, manufactured and supplied turbines for Navy submarines in accordance with the Navy's specifications and regulations. See Not. of Removal at ¶ 6.

## III.   DISCUSSION

This case is nearly identical to several cases this court has recently addressed involving asbestos-related claims by civilian employees of Electric Boat. In every prior case, this court denied the motion to remand. See Allen v. General Electric, No. 3:09-cv-497(JCH), 2009 WL 2766583, 2009 U.S. Dist. LEXIS 76593 (D. Conn. Aug. 27, 2009); Wight v. General Electric, No. 3:09-cv-645(JCH), 2009 WL 2766706, 2009 U.S. Dist. LEXIS 83411 (D. Conn. Aug. 27, 2009); Zema v. General Electric, No. 3:09-cv-1174(JCH). However, because this case involves a different defendant, and because CBS has provided the court with its own expert affidavit, the court will address the issues of this case separate from its prior rulings.

The federal officer removal statute permits removal of cases brought against "[t]he United States or any agency thereof or officer (or any person acting under that

---

[2] Because this case addresses issues occurring during the time period before the merger, for the sake of clarity the defendant in this opinion will be referred to as Westinghouse.

officer) of the United States or of any agency thereof, sued in an official capacity for any act under color of such office. . . ." 28 U.S.C. § 1442(a)(1).  This is a statutory exception to the well-pleaded complaint rule that a federal defense alone does not qualify a case for removal to federal court.  See Louisville-Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908).

Because Westinghouse is not a federal officer, in order to remove this case it must demonstrate: (1) that it is a person within the meaning of the statute who acted under a federal officer; (2) that it performed the actions for which it is being sued under color of federal office; and (3) that it has a colorable federal defense.  See Isaacson v. Dow Chemical Co., 517 F3d. 129, 135 (2d Cir. 2008) (citing Jefferson County v. Acker, 527 U.S. 423, 431 (1991)).  Although the burden of showing that federal jurisdiction exists lies with the party seeking removal, the Supreme Court has held that federal officer removal should not be constrained by a "narrow, grudging interpretation."  See Jefferson County, 527 U.S. at 431.  The defendant need not "virtually win his case before he can have it removed," because the purpose of section 1442(a)(1) is to have the federal defense tried and determined in federal court.  See id.

    A.    "Persons" "Acting Under" a Federal Officer

Westinghouse is a "person" within the meaning of the federal removal statute, which includes corporate persons.  See Isaacson 517 F.3d at 136.  However, Westinghouse must also show that it was "acting under" a federal officer: "an entity 'acts under' a federal officer when it 'assists, or helps carry out, the duties or tasks of the federal superior.'" See Isaacson, 517 F.3d at 137 (quoting Watson v. Philip Morris Cos., 551 U.S. 142, 152 (2007)).  Just as the defendants in Isaacson "contracted with

3

the Government to provide a product that the Government was using during war – a product that, in the absence of defendants, the Government would have had to produce itself," so did Westinghouse provide turbines to the U.S. Navy pursuant to specific contracts. See Isaacson, 517 F.3d at 137; Not. of Removal at ¶ 6. Westinghouse had "received delegated authority" to complete their contracts and were therefore helping carry out the duties of their federal superior. See Isaacson, 517 F.3d at 137. Thus, Westinghouse fulfills the "acting under" requirement for federal officer removal.

      B.      "Under Color of" Federal Office

The second requirement for federal officer removal is that the defendant performed the actions for which they are being sued "under color of" federal office. This is known as the causation requirement. See Isaacson, 517 F.3d at 137. The plaintiffs argue that Westinghouse must "prove that it was prevented from providing warnings by some federal officer" in order to fulfill this prong.[3] See Pl.'s Mem. at 10. This is too high a bar for this requirement, which only calls for a general connection between the action sued upon and the governmental function defendants were fulfilling. The Second Circuit recently stated that the bar for this requirement is "quite low." See Isaacson, 517 F.3d at 137. "To show causation, defendants must only establish that the act that is the subject of plaintiffs' attack . . . occurred while defendants were performing their official duties." Id. at 137-38 (internal citations omitted). Courts should

---

[3] Plaintiffs base their arguments on their failure-to-warn claims because they have "expressly abandon[ed] all claims except for" those claims. See Pl.'s Mot. at 9 n.3. However, the plaintiffs' original Complaint included claims that Westinghouse negligently designed and manufactured the turbines. See Compl., Ex. 1 to Not. of Removal, at ¶¶ 6k, 6l, 8, 9. As is discussed in greater detail below, see infra at 5-6, the right to removal is based on the pleadings as they are at the time of removal. See Vera v. Saks & Co., 335 F.3d 109, 116 n.2 (2d Cir. 2003).

4

"credit defendants' theory of the case when determining whether a causal connection exists." Id. at 137.

The actions sued upon in this case are plaintiffs' personal injuries, which they claim are a result of asbestos exposure while working in a shipyard. See Compl., Ex. 1 to Not. of Removal. Westinghouse states that the Navy exercised complete control over all aspects of its production of asbestos-containing components, from design to written materials and warnings. See Def.'s Mem. in Opp. to Pl.'s Mot. for Remand ("Def.'s Opp.") at 5-8 (Doc. No. 11); Affidavit of James M. Gate ("Gate Aff."), Ex. B to Def.'s Opp, at ¶ 5-10, 30-31. In Isaacson, the Second Circuit found that defendants had fulfilled the causation requirement because they were carrying out detailed contracts with the government for the manufacture of Agent Orange. See id. at 138. Because Westinghouse is in a similar position, they have demonstrated a causal link between the action on which plaintiffs sued and their official duties.

### C. Colorable Federal Defense

Finally, defendants must raise a colorable federal defense. Westinghouse raises the government contractor defense to both plaintiffs' design defect claims and their failure-to-warn claims. Although the plaintiffs have abandoned their design defect claims in this Motion, the Second Circuit has stated that courts should "evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed." See Vera v. Saks & Co., 335 F.3d 109, 116 n.2 (2003). In the Vera case, the Second Circuit addressed a situation where a plaintiff tried to "disavow or at least minimize" certain claims, just as the plaintiffs in this case have done. See id. Therefore, despite the plaintiffs' abandonment of the non-warning claims, this court will

consider Westinghouse's defenses to both sets of claims.

                1.      Failure-to-Warn Government Contractor Defense

The government contractor defense in failure-to-warn cases was set out by the Second Circuit in In re Joint E. and S.D.N.Y. Asbestos Litig. ("Grispo"), 897 F.2d 626, 630 (2d. Cir. 1990). Westinghouse must show: (1) "government control over the nature of product warnings"; (2) "compliance with the Government's directions"; and (3) "communication to the Government of all product dangers known to it but not to the Government." See Densberger v. United Techs. Corp., 297 F.3d 66, 75 (2d Cir. 2002) (quoting Grispo, 897 F.2d at 630 n.4). It is important to note that, to earn federal officer removal, the federal defense need only be colorable – not "clearly sustainable" or one that "will ultimately prevail." See Willingham v. Morgan, 395 U.S. 402, 407 (1969); Isaacson 517 F.3d at 139. Additionally, it is enough here to rely on defendant's assertions. See Isaacson 517 F.3d at 139. "One of the most important reasons for [federal officer] removal is to have the validity of the defense . . . tried in a federal court." See Willingham, 395 U.S. at 407. Through its notice for removal and supporting affidavits, Westinghouse has met the three elements of the government contractor defense in failure-to-warn cases.

                a.      Government Control Over the Nature of Product Warnings

The Navy tightly controlled the nature of warnings that government contractors could place on the products they created. According to James M. Gate, the former manager of Design Verification of the Marine Division of Westinghouse, "the U.S. Navy had precise specifications as to the nature of any communication affixed to equipment supplied by Westinghouse to the Navy." See Gate Aff. at ¶ 30. Additionally, the Navy

"required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information in a standardized format used by the Navy. These manuals included safety information to the extent – and only to the extent – directed by the Navy." See id. at ¶ 31.

                b.      Compliance with the Government's Directions

As for the second element, Westinghouse argues that it did not provide warnings because it was complying with the Navy's requirements. "Westinghouse would not have been permitted . . . to affix any type of warning or caution statement to equipment intended for installation onto a Navy vessel, beyond those required by the Navy, without prior discussion with, and approval by, the Navy." See Gate Aff. at ¶ 30. Gates also stated that, "Both under the specifications and regulations, and in practice, the Navy had ultimate control over the nature of warnings communicated to Navy, Navy shipyard and/or contract shipyard personnel in relation to shipboard equipment and materials." See id. at ¶ 32. These statements demonstrate that Westinghouse was acting in compliance with the Navy's directions.

Plaintiffs argue that defendants must "establish with affirmative evidence that, in fact, the Navy prohibited it from affixing warnings to its products or including them in its service manuals . . . ." See Pl.'s Mem. at 19. Plaintiffs provide evidence rebutting defendants' claims of compliance in the form of an affidavit from Captain Robert Bruce Woodruff, who argues that it is "more likely than not [that] such a warning label would definitely have been considered." See Affidavit of Robert Bruce Woodruff, Ex. A to Pl.'s Mem., at 14. This dispute goes beyond the issues to be resolved in a motion for

remand and into the issues to be resolved at trial. While Westinghouse may need to prove with "affirmative evidence" that the Navy prohibited them from adding warnings to their products in order to avoid liability, the defendant need not "virtually win his case before he can have it removed." See Jefferson County, 527 U.S. at 431. Westinghouse has provided the court with sufficient evidence to satisfy this element of the government contractor defense for the purposes of removal.

        c.        Communication of All Dangers Known to Defendants but not to the Government

Finally, Westinghouse states that the Navy was well aware of the dangers that asbestos posed and indeed was the leading expert in the field of asbestos hazard control.[4] See Def.'s Opp. at 19. There were no dangers known to the defendants that were not also known to the Navy. See Affidavit of Roger B. Horne, Ex. C to Def.'s Opp. at ¶¶ 16. Therefore, Westinghouse met all three elements and have demonstrated that they have a colorable government contractor defense to the failure-to-warn claims.

        2.        Design Defect Government Contractor Defense

In order to satisfy the requirements of a government contractor defense in design defect cases, Westinghouse must show: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that

---

[4] Plaintiffs argue that the Navy's leadership in occupational medicine and its health monitoring programs are irrelevant because they were civilian employees of a civilian employer. See Pl.'s Mem. at 5. However, defendants do not need to demonstrate that the Navy had "exclusive control and regulatory authority over the health and safety of these plaintiffs," as plaintiffs argue. Id. The government contractor defense only requires the defendant to demonstrate that they communicated "all product dangers known to [them] but not to the [Navy]." See Densberger, 297 F.3d at 75. The Navy's leadership in the field of occupational medicine is relevant to what it knew about asbestos, and it is undisputed that the Navy was well aware of the potential health hazards of using asbestos. Therefore, this argument fails.

were known to the supplier but not to the United States." See Boyle v. United Techs. Corp., 487 U.S. 500, 512 (1987).

          a.      Government Control Over Design Specifications

The turbines which Westinghouse manufactured were made to the Navy's exact specifications. According to Gate, "With respect to any turbines, turbine-generators or similar marine equipment supplied by Westinghouse for use aboard Navy submarines constructed at Electric Boat, all aspects of the design, performance requirements, and materials used for the construction of such equipment . . . were specified by NAVSEA, which acted under the authority of the Secretary of the Navy." See Gate Aff. at ¶ 6. In particular, "All final design drawings and specifications required express U.S. Navy approval and adoption." See id. at ¶ 14. The Navy's specifications for these turbines included the use of "asbestos-containing thermal insulation." See id. at ¶ 7.

          b.      Conformity to Government Specifications

Westinghouse's manufacture of turbines was closely supervised by the Navy. According to Gate, "virtually no aspect of the development, manufacture, and testing of [the turbines] escaped [the Navy's] close control." See Gate Aff. at ¶ 8. Before a ship was commissioned by the Navy, the turbines went through a number of tests to ensure that it met the Navy's specifications, and if the turbines did not meet the Navy's requirements, Westinghouse was required to remedy the deficiency. See id. at ¶ 17-27. Therefore, any finished turbines must have conformed with the Navy's specifications.

        c.        Communication of All Dangers Known to Defendants but not to the Government

For the reasons stated above, <u>see</u> <u>supra</u> at 8, on the record before the court, there were no dangers known to the defendants that were not also known to the Navy. Therefore, Westinghouse has met all three elements and has demonstrated that it has a colorable government contractor defense to the design defect claims.

Westinghouse has satisfied the test for federal officer removal by "persons" not themselves federal officers: it demonstrated that it was acting under a federal officer, that there was a causal connection between the action sued upon and its official duties, and that it has a colorable federal defense to both the failure-to-warn claims and the design defect claims. Because Westinghouse has satisfied the <u>Isaacson</u> test, the court denies plaintiffs' Motion for Remand.

## IV. CONCLUSION

Plaintiffs' Motion to Remand to State Court (Doc. No. 10) is DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 1st day of December, 2009.

                                  /s/ Janet C. Hall
                                  Janet C. Hall
                                  United States District Judge